# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **COREY CROCKETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-cv-00545** |
| | ) | **Judge Trauger** |
| **DAVIDSON COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Corey Crockett, an inmate at the Davidson County Sheriff's Office ("DCSO") in Nashville, Tennessee, filed a *pro se* civil rights action under 42 U.S.C. § 1983 against the Davidson County Sheriff's Department and a DCSO employee identified as Mrs. Levy. (Doc. No. 1 at 2.) He also filed an application to proceed in this court without prepaying fees and costs. (Doc. No. 2.)

## I.      Application to Proceed as a Pauper

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from the plaintiff's *in forma pauperis* application that he cannot pay the full filing fee in advance, his application (Doc. No. 2) will be granted.

## II.     Initial Review

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The court must also construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual

allegations as true unless they are entirely without credibility, *see Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A.    Factual Allegations

The complaint addresses three separate instances of unconstitutional conduct—an alleged lack of due process related to a disciplinary hearing, an incident culminating in the alleged use of force by DCSO staff members, and the plaintiff's mental health treatment. The plaintiff requests monetary damages. (Doc. No. 1 at 4, 6–8.)

### 1.    Disciplinary Hearing

At some point, the plaintiff received a write-up. (Doc. No. 1 at 4.) He alleges that a DCSO Lieutenant placed him on property restriction for 72 hours on April 8, 2019. (Doc. No. 1 at 4.) At that time, the Lieutenant stated that, "per policy," inmates must receive a written copy of charges against them regardless of whether they are on property restriction. (*Id.*) The plaintiff alleges that DCSO employee Mr. Huelsley dismissed his write-up that same day. (*Id.*)

During the plaintiff's disciplinary hearing on May 6, 2019, Defendant Mrs. Levy allegedly refused to follow "policy [and] procedure." (*Id.*) The plaintiff did not receive a copy of his charges, and Mrs. Levy apparently did not accept his explanation that the write-up had already been dismissed. (*Id.*) Mrs. Levy sentenced the plaintiff to "(2) 15 day lockdown consecutive." (*Id.*)

The plaintiff filed a grievance and a disciplinary appeal. (*Id.*) The plaintiff's appeal was rejected, as Sgt. Beach stated that the plaintiff "reviewed [his] write-up at [his] cell door." (*Id.*) The plaintiff alleges that Beach was lying. (*Id.*) In fact, according to the plaintiff, he was in his cell "at least 30 mins after the incident" that caused the write-up, and neither Beach nor any other officer showed him any notice of charges at his cell. (*Id.* at 8.)

The plaintiff's allegations regarding the grievance response are inconsistent. Initially, he alleges that the response, prepared by Beth Gentry, stated, "Mrs. Levy does not follow due process rules." (*Id.* at 4.) Elsewhere, however, the plaintiff alleges that the response reflected that Mrs. Levy "had conducted herself accordingly." (*Id.* at 8.) Gentry also allegedly responded that "Sgt. Beach did in fact ma[k]e sure [that the plaintiff had] seen [his] charges at [his] door." (*Id.*) According to the plaintiff, Gentry should have checked the cameras in the plaintiff's pod to see if anyone came to his cell. (*Id.*)

## 2. Use of Force

The plaintiff alleges that, around 12:27 a.m. on April 27, 2019, he was taken from his cell to receive one hour of recreation. (*Id.* at 7.) The plaintiff wanted to shower at the end of recreation, rather than at the beginning. (*Id.*) As the plaintiff was being placed in restraints, he asked Officer Hughes a series of questions, resulting in Hughes becoming "agitated" and cancelling the plaintiff's recreation "permanently for the night/day." (*Id.*) It is unclear what these specific questions were. The plaintiff describes them as follows: "I asked the Officer (C/O Hughes) does he have a problem with me [and] all he had to do is talk to me, due to me asking him why would my rec. be cancelled cause I don't want to receive a shower at the beginning of my 1 hour of rec. instead of the end of my hour. So this was the question that was repeated along with others." (*Id.*)

After Officer Hughes cancelled the plaintiff's recreation, the plaintiff was taken out of restraints and told to return to his cell. (*Id.*) The plaintiff asked to use the kiosk, hoping to access the inmate handbook to determine whether "policy [and] procedures" permitted Hughes to take away the plaintiff's recreation "for asking questions about [his] rec." (*Id.*) A report would describe the plaintiff's conduct as "refus[ing] a direct order . . . to proceed to [his] cell after being unrestrained." (*Id.*) Officer Hughes and another unnamed DCSO staff member "t[ook the plaintiff]

to the ground" and "subdued" him. (*Id.*) Lieutenant Howard told Hughes to "get [the plaintiff] to [his] feet." (*Id.*) Hughes then "maliciously grabbed [the plaintiff] by his jump suit [and] lifted [him] in the air [and] shook [him] around like a ragdoll." (*Id.*) Hughes then regained his composure and "plac[ed the plaintiff] on the ground." (*Id.*)

### 3. Mental Health

In a matter seemingly unrelated to the disciplinary proceedings addressed above, the plaintiff alleges that he is a "mental health inmate who [has] been in punitive segregation" since March 21, 2019. (*Id.* at 8.) He alleges that DCSO staff is "not concerned about [his] well being" and is "negligent towards [his] mental health." (*Id.*)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## C.    Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015)).

### 1.    Due Process

The plaintiff alleges that Mrs. Levy violated DCSO policy and denied him due process during a disciplinary hearing on May 6, 2019. He also alleges that he filed a grievance related to the hearing, and that Beth Gentry provided an unsatisfactory response. As an initial matter, to the extent that the plaintiff's claims are "premised on the mishandling of his grievances or violation of [DCSO] policies," he fails to state a claim under Section 1983. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("[A] prisoner has no constitutional right to an effective prison grievance procedure, *see Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and claims related to violations of prison policies do not state a constitutional violation, *see Grinter* [v. *Knight*], 532 F.3d [567,] 574 [6th Cir. 2008].").

As to the plaintiff's constitutional due process claim, the Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, the plaintiff must show that (1) he had a protected liberty or property interest; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of that interest. *Janinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The first prong of this claim is a

threshold requirement. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson*, 545 U.S. at 224).

Prisoners have a narrower set of protected interests than individuals who are not incarcerated. *Wolff*, 418 U.S. at 556. For instance, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A liberty interest may arise, however, in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, the plaintiff alleges that Mrs. Levy sentenced him to "(2) 15 day lockdown consecutive." Liberally construing this allegation, the court assumes that the plaintiff's sentence amounted to 30 days in more restrictive conditions of confinement. Nonetheless, for at least two reasons, this allegation does not satisfy the threshold requirement of demonstrating a constitutionally protected liberty interest.

First, the plaintiff does not provide any details about the restrictions imposed as a result of being placed in lockdown. Without explaining how lockdown conditions differ from his ordinary conditions, the plaintiff cannot establish that his punishment resulted in an "atypical and significant" hardship. *See Williams*, 526 F. App'x at 562–63 (holding that an inmate had "not established that the change in the conditions of his confinement was 'atypical and significant,'" in part, because the inmate had not produced facts "establishing the ordinary conditions of confinement"); *Joseph v. Curtin*, 410 F. App'x 865, 869 (6th Cir. 2010) (holding that an inmate had "not demonstrated that a liberty interest was implicated" because his "complaint [did] not

include any allegations about" his new security classification level "to suggest that it imposes an atypical and significant hardship").

Second, the plaintiff's 30-day sentence was simply too short to rise to the level of an "atypical and significant" hardship. To "implicate due process considerations," a prisoner's confinement in more restrictive conditions typically must be "prolonged or indefinite." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). The Sixth Circuit has held that periods of confinement significantly longer than 30 days did not establish a protected liberty interest. *See id.* (holding that 69 days in segregation was not an atypical or significant deprivation of liberty); *see also Powell v. Washington*, 720 F. App'x 222, 227 (6th Cir. 2017) ("Powell's six-month confinement in administrative segregation is insufficient to constitute an atypical and significant hardship and therefore does not implicate his due process rights."); *McMann v. Gundy*, 39 F. App'x 208, 210 (6th Cir. 2002) (holding that five months in administrative segregation was "not excessive or unusual"); *but see Harden-Bey v. Rutter*, 524 F.3d 789, 792–93 (6th Cir. 2008) (finding that placement in confinement for three years without a definite end-point may be "atypical and significant").

In sum, the plaintiff has not satisfied his threshold burden of establishing that the challenged disciplinary hearing resulted in conditions of confinement that "impose[] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. For this reason, he fails to state a procedural due process claim.

### 2. Use of Force

The plaintiff also alleges that, after Officer Hughes cancelled the plaintiff's recreation and told him to return to his cell, DCSO staff members used some amount of force against him. The Eighth Amendment protects prisoners from "cruel and unusual punishment," which includes the

right to be free from excessive force by prison officials. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Whitley v. Albers*, 475 U.S. 312, 318–22 (1986)). This claim has objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). For the objective component, a plaintiff must demonstrate that a prison official inflicted pain that was "sufficiently serious" based on "contemporary standards of decency." *Id.* at 585 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). The subjective component requires the court to consider whether the force applied by a prison official was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 580 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Here, even liberally construing the complaint, the plaintiff has not satisfied the objective component of this claim. The plaintiff's allegations regarding the level of force used during this incident are vague, and the plaintiff does not allege that he suffered any pain or injury from this incident whatsoever. That is, the plaintiff alleges that Officer Hughes and another staff member "t[ook the plaintiff] to the ground" and "subdued" him. Then, Hughes allegedly lifted the plaintiff into the air by his jump suit and "shook [the plaintiff] around like a ragdoll," before "placing [the plaintiff] on the ground." Based on these allegations, the court cannot conclude that "'the pain inflicted' by [DCSO staff members] was 'sufficiently serious' to offend 'contemporary standards of decency.'" *Cordell*, 759 F.3d at 585 (quoting *Williams*, 631 F.3d at 383). Accordingly, the plaintiff fails to state an excessive force claim.

### 3. Mental Health Care

Next, the plaintiff seemingly alleges that he has not received adequate mental health care due to his placement in punitive segregation. The Eighth Amendment imposes a duty on prison officials to provide adequate medical care to convicted prisoners. *Darrah v. Krishner*, 865 F.3d

361, 367 (6th Cir. 2017) (citing *Estelle*, 429 U.S. at 104). Thus, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* (quoting *Estelle*, 429 U.S. at 105). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, the plaintiff has not satisfied either the objective or subjective component of this claim. As to the objective component, the Sixth Circuit has held that "a prisoner's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (citations omitted). But in this case, the plaintiff does not provide any specific factual allegations about his psychological condition or mental health needs. Accordingly, the court has no basis to conclude that the plaintiff's unspecified mental illness constitutes a sufficiently serious medical need.

Next, "the subjective component of a deliberate indifference claim must be addressed for each officer individually." *Winkler*, 893 F.3d at 891 (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)). That is, the plaintiff must allege that a specific defendant "was aware of facts from which he or she could infer a substantial risk of serious harm." *Id.* Here, the plaintiff does not explain how any particular DCSO staff member has been involved in the alleged denial of adequate mental health care. Instead, he alleges that DCSO staff is "not concerned about

[his] well being" and is "negligent towards [his] mental health." But the subjective component of this claim requires "more than negligence." *Id.* (quoting *Comstock*, 273 F.3d at 703). Thus, the plaintiff has not alleged that any DCSO staff member had the state of mind necessary to satisfy the subjective component. For all of these reasons, the plaintiff fails to state a claim for denial of adequate mental health care.

### 4.    Official Capacity Claims

Finally, the plaintiff also brings this action against Defendant Mrs. Levy in her official capacity. (Doc. No. 1 at 2.) Mrs. Levy, along with the other individuals named in the complaint, are employees of Davidson County Sheriff's Office. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, the plaintiff's official capacity claims are essentially claims against Davidson County. Moreover, the plaintiff names the Davidson County Sheriff's Department as a defendant in both its individual and official capacities (Doc. No. 1 at 2), but jail facilities are not proper defendants under Section 1983. *McIntosh v. Camp Brighton*, No. 14–CV–11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases). Accordingly, the court construes this as an attempt to impose liability on Davidson County as well.

To state a claim against Davidson County, the plaintiff must allege that he "suffered a constitutional violation" and that the County's "policy or custom directly caused the violation." *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). Here, the plaintiff does not allege that any of the allegedly unconstitutional conduct in the complaint was caused by a policy or custom

of Davidson County. The plaintiff, therefore, fails to state a claim against Davidson County, and his official capacity claims will be dismissed.

**III.     Conclusion and Order**

For these reasons, the plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) is **GRANTED**, and this action is **DISMISSED** for failure to state a claim. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

For the same reasons that the court dismisses this action, the court **CERTIFIES** that any appeal in this matter would not be taken in good faith. 28 U.S.C. § 1915(a)(3). The court, therefore, will not grant the plaintiff leave to proceed *in forma pauperis* on any appeal.

This is the final order denying all relief in this case. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b).

_____
ALETA A. TRAUGER
United States District Judge